# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kathleen Stanek,                                        **Civil File No.: 10-4870 PJS/SER**

      Plaintiff,

v.                                                      **<u>REPORT AND RECOMMENDATION</u>**

Michael J. Astrue, Commissioner
of Social Security

      Defendant.

---

    Edward C. Olson, Esq., 331 2nd Ave South, Suite 240, Minneapolis, Minnesota 55401, on behalf of Plaintiff.

    Lonnie F. Bryan, Esq., Office of the United States Attorney, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

    Pursuant to 42 U.S.C. § 405(g), Plaintiff Kathleen Stanek ("Stanek") seeks review of the Commissioner of Social Security's ("Commissioner") denial of Stanek's application for social security disability insurance (SSDI) and Social Security Income (SSI).  This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.  The parties filed cross-motions for summary judgment.  [Doc. Nos. 10, 16].  For the reasons set forth, the Court recommends that Stanek's motion be denied and Defendant's motion be granted.

## I.     BACKGROUND

### A.  Procedural History

Stanek filed an application for SSDI and SSI on April 25, 2008, alleging a disability onset date of April 4, 2008.  (Admin. R. at 11, 28).  At the hearing, Stanek amended the onset date to March 31, 2009 because she was employed gainfully full-time from the original date of April 4, 2008 until the amended date of March 31, 2009.  (*Id.* at 32-33).  Stanek alleges the following impairments: shoulder pain, obesity, right knee pain, depression, traumatic brain injury with memory loss, neck pain, lower extremity edema, obstructive sleep apnea, and left ankle pain.[1]  (Pl.'s Mem.) [Doc. No. 11, at 2-4]; *see also* (Admin. R. at 34, 37-38, 40, 65, 150).  Stanek asserts that these impairments prevented her from obtaining gainful employment.

Stanek's application was denied initially on July 30, 2008 and was denied for reconsideration on October 22, 2008.  (*Id.* at 54-57, 60-65, 67-69).  Stanek requested a hearing.  (*Id.* at 66, 74).  Administrative Law Judge Hallie Larsen ("the ALJ") heard the matter on January 6, 2010.  (*Id.* at 23-53).  On March 22, 2010, ALJ Larsen issued an unfavorable decision.  (*Id.* at 11-22).  The Appeals Council denied Stanek's request for a review of the ALJ's decision on October 13, 2010.  (*Id.* at 1-3).  The denial of review rendered the ALJ's decision the final decision of the Commissioner.  *See* 42 U.S.C. § 405(g); *Browning v. Sullivan*, 958 F.2d 817, 822

---

[1]  Stanek's brief does not precisely define her severe impairments but rather lists the medical conditions from which she suffers.  (Pl.'s Mem. at 2-4).  She does not appear to contest the ALJ's determination of only three severe impairments: 1) degenerative joint disease of the right knee (status post arthroscopy); 2) obstructive sleep apnea; and 3) obesity.  (Admin. R. at 14).  The Court need not address arguments that a party failed to raise or discuss in its brief because waiver is "deemed an abandonment of that issue."  *Jasperson v. Purcolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985); *see Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006) (citing *Jasperson* in determining waiver); *see also Mark v. Ault*, 498 F.3d 775, 786 (8th Cir. 2007) (quoting *Hacker*, 459 F.3d at 937 n.2) (holding failure to raise or address an issue constitutes abandonment).  As such, the Court will focus on the medical records and other evidence pertaining to the left ankle and right knee impairments that form the basis of Stanek's motion.

(8th Cir. 1992).   Stanek now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### B.    Plaintiff's Testimony

As of the date of the hearing, Stanek was 59 years old.  (*Id.* at 27).  Stanek completed several years of community college and received associates degrees in secretarial science and marketing management.  (*Id.* at 27-28).  She last worked as a Census Bureau field representative, from April 2008 to March 2009, when she was terminated for taking too long to complete cases.  (*Id.* at 29, 35).  Spending long hours in the car as part of her Census Bureau position aggravated her edema and pain in her left ankle, right knee, and back.  (*Id.* at 35).  Since then, she has been actively seeking new employment and testified that she was able and willing to work again.  (*Id.* at 36-38).  As stated previously, Stanek requested an amended disability onset date of March 31, 2009 because of the work she performed after the initial disability onset date.  (*Id.* at 33-34, 96).  As of the date of the hearing, she was collecting unemployment benefits.  (*Id.* at 32).

Now that she is not working, Stanek spends four to five hours a day reading books and surfing the Internet.  (*Id.* at 42).  She participates in Bible study, attends church weekly, and writes and publishes her church's newsletter.  (*Id.* at 42-43).  Stanek has no problems socializing or interacting with anyone in her church groups.  (*Id.*).  Stanek lives alone, drives on a daily basis, and uses a cane for stability.  (*Id.* at 28).  Stanek can perform household chores such as dishes, vacuuming, and lawn mowing, though she must take rest breaks.  (*Id.* at 36-37, 41-42).  She testified that she could not sit or stand for an extended period of time, yet she could lift 10 to 15 pounds.  (*Id.* at 36-37).  Stanek asserted that she is capable of caring for her daily personal needs but was afraid of falling in the shower and struggles to put on shoes because of her weight.  (*Id.* at 41).

In the past few years Stanek has been diagnosed with fibromyalgia, sleep apnea, asthma, and depression.  (*Id.* at 38-40).  Occasional floaters and cataracts worsen her vision and lessen the amount of time she can spend on the computer; Stanek nevertheless can drive.  (*Id.* at 43-44).  Stanek has had bladder control problems that required her to leave the road to relieve herself in the woods when she was on the job for the Census Bureau.  (*Id.* at 45).

She testified that an improperly healed left ankle sprain that occurred in 1981 and a twisted knee in 2008 that required surgery restrict her mobility.  (*Id.* at 38).  Stanek asserted that her knee pain did not improve after surgery.  (*Id.* at 45-46).  The pain and restriction caused by her ankle, knee, back, and neck injuries has been consistent from her amended disability onset through the date of the hearing.  (*Id.* at 38).  Yet, her personal physician, Dr. Michael Liebe[2] ("Dr. Liebe"), did not recommend that she avoid any specific activities.  (*Id.* at 39).

C. **Medical Evidence**

1. **Evidence Predating Disability Onset Date**

Stanek saw Dr. Harker at the Grand Itasca Clinic on March 28, 2008 complaining of right knee pain and swelling.  (*Id.* at 252, 267).  His examination showed no swelling, tenderness, or warmth to Stanek's knee.  (*Id.*).  Suspecting a cartilage tear, Dr. Harker recommended weight loss and exercise involving low weights.  (*Id.* at 267).  Radiologist Dr. Steven Haugen, M.D., analyzed Stanek's x-rays and identified effusion in Stanek's right knee and a possible posterior joint body.  (*Id.* at 252, 401).  Stanek's left knee was normal; the exam was otherwise negative for abnormalities.  (*Id.*).

---

[2]  Based on the medical evidence in the Administrative Record, the Court has determined that the transcript from the hearing before the ALJ in error refers to Dr. Liebe as "Dr. Victor Levy."  (*Id.* at 39).

On May 12, 2008, Stanek visited the emergency room at Grand Itasca Clinic and Hospital complaining of shortness of breath.  Dr. Jamison L. Harker noted that her ankles were swollen but made no mention of knee or ankle pain.[3]  (*Id.* at 230-31).  Similarly, in an office visit on May 23, 2008, Dr. Liebe noted that Stanek was able to move her extremities "equally well" and did not mention knee or ankle pain.  (*Id.* at 339-40).

On May 31, 2008, Stanek completed a Function Report and stated in an attached addendum that when she walks on stairs, she must use the railing to brace herself because of pain in her right knee and weakness in her left ankle.  (*Id.* at 174).  She asserted that she cannot squat, kneel, or twist because of pain in her right knee.  (*Id.* at 174-75).  In a Function Report on September 26, 2008, Stanek also complained of right knee pain while standing, squatting, bending, kneeling, and climbing stairs.  (*Id.* at 194).

On June 16, 2008, psychologist Jeff Toonstra conducted a Mental Status Examination and Activities of Daily Living Assessment.  (*Id.* at 290-95).  Toonstra made no mention of Stanek's purported left ankle impairment.  (*Id.*).  The only limitation Stanek's right knee had on her daily activities was that she could not work in her garden because she could not kneel.  (*Id.* at 291).

On July 11, 2008, the state agency medical expert, Dr. DeBorja, conducted a musculoskeletal evaluation of Stanek's medical records and completed a Physical RFC Assessment.  (*Id.* at 296-97, 298-305).  He noted no musculoskeletal abnormalities or pain in Stanek's lower extremities.  (*Id.* at 296).  Stanek was not taking pain medication despite her knee

---

[3] Stanek was seen several times by various providers and was not in acute distress.  (*Id.* at 199, 266, 270, 273, 329, 392).  In office visits in September 2006 and February 8, 2008, Dr. Harker specifically stated that he did not believe that Stanek was disabled from employment.  (*Id.* at 268, 274).  In response to Stanek's request, Dr. Harker offered to discuss disability forms with Stanek; she asserted that she would continue to seek employment.  (*Id.* at 268).

"abnormalities;" her musculoskeletal problems were "short-lived occurrences" and were not ongoing. (*Id.* at 297). Despite reporting right knee pain on March 28, 2008, Stanek had a normal gait on April 20, 2008. (*Id.* at 296). Stanek's fibromyalgia examination on July 23, 2007 showed no tenderness or swelling at the knee or ankle joints. (*Id.*). DeBorja concluded that Stanek's degenerative arthritis occurred only occasionally and that her musculoskeletal impairments, though severe, did not meet or equal Listing 1.02 (major dysfunction of a joint) or Listing 1.04 (disorders of the spine). (*Id.* at 297).

DeBorja's Physical RFC Assessment identified obesity as Stanek's primary diagnosis and arthritis as a secondary diagnosis. (*Id.* at 298). He assessed Stanek at a medium RFC with the following exertional limitations: 1) able to lift 50 pounds occasionally and 25 pounds frequently; 2) able to stand or walk or sit for six hours in an 8 hour work day with normal breaks; 3) capable of unlimited pushing and pulling with feet and hands; and 5) capable of occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (*Id.* at 299-300). DeBorja identified no manipulative, visual, or communicative limitations. (*Id.* at 301-02). Stanek's environmental limitations were to avoid all exposure to extreme cold and to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. (*Id.* at 302).

Dr. DeBorja's report checked a box noting the absence of a treating or examining source statement regarding Stanek's RFC, which "includes situations in which there was no source or when the source(s) did not provide a statement regarding the claimant's physical capabilities." (*Id.* at 304). Dr. DeBorja did not state whether his assessment differed or contradicted the opinion of a treating physician. (*Id.*). In response to Stanek's request for reconsideration, Dr. Sandra Eames affirmed Dr. DeBorja's Assessment in its entirety. (*Id.* at 350-52).

In an October 9, 2008 office visit with Dr. Liebe, Stanek reported experiencing severe knee pain and difficulty walking, doing household chores, and gardening. (*Id.* at 418). The ibuprofen and aspirin she was taking for pain were not helping. (*Id.*). Her right knee x-rays were "unremarkable except for possibly a joint body." (*Id.*). Stanek did not, however, have any ankle pain or swelling or joint effusion in her knees or ankles. (*Id.* at 419). Dr. Liebe also made reference to filling out an RFC evaluation of Stanek on the request of Disability Specialists.[4] Dr. Liebe stated that though he had seen Stanek "very little" he would complete the forms to the best of his ability, "proceed with a functional capacity test," and review Stanek's "functional capacity result." (*Id.* at 418-19).

In office visits on March 2 and March 18, 2009, Stanek's primary complaints were pain in her right knee and left ankle.[5] (*Id.* at 399-400, 405). Stanek asserted that the most severe of her ailments was her left ankle pain which she experienced for at least five years. (*Id.* at 399, 406). She experienced clicking and pain in her right knee even though she took anti-inflammatory medications. (*Id.* at 399, 406). An x-ray revealed no fractures or other abnormalities in Stanek's left ankle, but radiologist Dr. Steven Haugen noted some mild spurring and swelling. (*Id.* at 402).

### 2. Medical Records Between the Amended Onset Date and the ALJ's Decision

Complaining of knee and ankle pain, Stanek saw Dr. Liebe again on April 8, 2009. (*Id.* at 397-98). Stanek was unwilling to consider surgery on her knee and the conversation centered

---

[4] The Record does not include a formal RFC Assessment from Dr. Liebe. Neither party made mention of this fact in their memoranda, nor was any further information provided as to whether Dr. Liebe completed an evaluation.

[5] In a March 2, 2009 visit, Stanek listed 33 specific complaints regarding her physical and mental health. (*Id.* at 405). Her knee and ankle pain were not addressed in the assessment and plan, but rather Dr. Liebe focused on Stanek's infected lesion. (*Id.* at 406).

instead on her emotional issues.  (*Id.* at 397).  She also reported losing her Census job because she was not making her quota.  (*Id.*).

Apparently Stanek reconsidered her willingness to have surgery because in a letter dated April 9, 2010, she complained of continued pain in her right knee after surgery in June 2009.  (*Id.* at 212).  She claimed an inability to kneel or climb stairs since the surgery.  (*Id.*).  Stanek also mentioned pain in her left knee and swelling in her ankles, feet, and hands.  (*Id.* at 212-13).

Stanek's personal representative, Christine Edberg,[6] also submitted a letter on Stanek's behalf outlining specific objections to the ALJ's decision.  (*Id.* at 214-16).  Stanek described the extreme pain in her right knee and left ankle that prevented her from completing household and daily living tasks despite physical therapy.  (*Id.* at 214-15).  She contended that her lack of health insurance was the reason she did not seek medical care for her illnesses and injuries between July 2009 and the following January and that she was thinking of obtaining a second opinion on right knee replacement surgery.  (*Id.* at 215-16).

On May 28, 2009, Dr. Liebe ordered an MRI of Stanek's right knee based on her complaints of pain and difficulty walking.  (*Id.* at 382, 384).  He explained that losing weight may alleviate her pain.  (*Id.* at 382).  The MRI revealed a definite tear of the medial meniscus and a potential tear of the lateral meniscus.  (*Id.* at 383).

On June 9, 2009, Stanek saw Dr. Daniel Lister on a referral from Dr. Liebe for a complex meniscus tear in her right knee.  (*Id.* at 375-76).  Stanek reported that her right knee pain began after twisting the knee in February 2008 and progressively became worse.  (*Id.* at 371).  Stanek told Dr. Lister that she experienced occasional sharp pain in her knee but that her knee did not

---

[6] Christine Edberg is a member of the National Association of Disability Representatives and does not appear to be an attorney.  ZoomInfo Directory, Christine Edberg Profile, http://www.zoominfo.com/#!search/profile/person?personId=1075884729&targetid=profile  (last updated July 23, 2011).

lock or give out.  (*Id.* at 375).  A full range of extension in excess of 105 degrees was observed.  (*Id.*).  Dr. Lister diagnosed Stanek with a chronic medial meniscal tear and early degenerative arthritis.  (*Id.*).

Dr. Lister performed arthroscopic meniscus surgery on Stanek's right knee on June 19, 2009, which she tolerated well.  (*Id.* at 369-70).  Five days after her surgery, Stanek saw Dr. Lister for a follow-up visit.  (*Id.* at 368).  Dr. Lister applied new dressing to the incision, stated Stanek was "doing well," and referred her for physical therapy.  (*Id.*).  Stanek saw Dr. Mark Rasmusson for an orthopedic follow-up visit after her right knee surgery on June 30, 2009.  (*Id.* at 367).  She rated her pain as three out of ten and reported resolution of the increased pain and swelling.  (*Id.*).  Dr. Rasmusson removed Stanek's stitches and observed a good active and passive range of motion in her knee.  (*Id.*).  He assured Stanek that he would follow-up on the second injury she experienced after tripping over a cooler and urged her to continue with physical therapy.  (*Id.*).

### 3.  Records Submitted after Administrative Hearing

On February 23, 2010, Stanek saw Dr. Lister for an eight-month surgery follow-up visit.  (*Id.* at 426-27).  Stanek had some pain after surgery because she fell over a cooler, though she had no effusion and only moderate tenderness in her knee.  (*Id.* at 427).  He also diagnosed Stanek with progressive degenerative arthritis and loss of medial joint space with bone on bone sclerosis.  (*Id.*).  Stanek and Dr. Lister discussed treatment options including weight loss, physical therapy, visco injections, and total knee replacement.  (*Id.*).

Stanek saw Dr. Liebe on February 18 and March 18, 2010 to seek additional care for her persistent knee and back pain and to talk about applying for disability.  (*Id.* at 423-25, 428-29).  Dr. Liebe stated that though Stanek's knee pain had not improved since her surgery, she did not

complain of any swelling, locking, or other problems with her knee. (*Id.* at 424, 429). Stanek had a "good range of motion to her knees" and was able to get on and off the exam table without difficulty. (*Id.* at 429). Despite physical therapy, however, Stanek's knee pain increased. (*Id.* at 424). Dr. Liebe stated that Stanek's knee and back pain would improve dramatically if she lost weight and opined she did not meet the disability criteria. (*Id.* at 424, 429).

### D. **Vocational Expert Testimony**

Thomas Audet testified as a vocational expert ("VE") at the hearing before the ALJ. (*Id.* at 46-52). Audet summarized Stanek's previous work history as ranging from unskilled to semiskilled and from sedentary to medium exertion positions. (*Id.* at 47). He described Stanek's previous Census position (DOT 205.367-054) as light duty, unskilled work. (*Id.* at 48).

The ALJ asked Audet to consider a hypothetical fifty-nine year-old individual with the same past work experience as Stanek, a residual functional capacity ("RFC") of medium, and the following characteristics: 1) able to lift up to 25 pounds frequently and up to 50 pounds occasionally; 2) able to sit and stand or walk for six hours in an eight hour day with normal breaks; 3) could occasionally climb, balance, stoop, kneel, crouch, or crawl; 4) should avoid all exposure to extreme cold; and 5) should avoid even moderate exposure to vibration or any work around hazards. (*Id.* at 48, 210).

Audet testified that a person with those restrictions would be able to perform the jobs of a silk screen printer, mail clerk, comparison shopper, and receptionist. (*Id.* at 48). Audet asserted that Stanek could perform the silk screen printer, comparison shopper, and receptionist jobs at a light exertion level and mail clerk positions at a medium exertion level as described in the Dictionary of Occupational Titles (DOT). (*Id.* at 49). The mail carrier and Census enumerator positions would not fit the hypothetical person because of exposure to the extreme cold. (*Id.*)

The ALJ then posed a second hypothetical for an individual of Stanek's age, work experience, and education level and the following characteristics: 1) limited to lifting 10 pounds frequently and 20 pounds occasionally; 2) able to sit, stand or walk for up to six hours each day; 3) should only occasionally climb, balance, stoop, kneel, crouch or crawl; and 4) must avoid even moderate exposure to hazards. (*Id.* at 50). Audet asserted that an individual described in the second hypothetical could perform the positions of comparison shopper, silk screen printer, and mail clerk as described in the DOT and the receptionist position as Stanek performed it in the past. (*Id.* at 49-50). He added that the second hypothetical individual could also perform the positions of Census enumerator and mail clerk described in the DOT. (*Id.* at 50).

Stanek's personal representative asked Audet if his opinion would change if the person in the hypothetical was unable to stand for more than ten minutes at a time. (*Id.* at 50). Audet answered that the jobs of mail clerk, silk screen printer would probably be affected because the person would have to sit down often. (*Id.*). The hypothetical individual could still perform the job of a receptionist as there is little need to stand more than 10 minutes at a time. (*Id.* at 50-51). Upon further questioning, Audet testified that the hypothetical individual was capable of performing the Census enumerator position so long as the 30 minutes of standing required in that position were not all at once. (*Id.* at 51-52). The VE noted that Census jobs were not consistently available. (*Id.* at 51).

### E. **The ALJ's Decision**

The ALJ issued an unfavorable decision on March 22, 2010. (*Id.* at 11-22). In finding that Stanek was not disabled, the ALJ employed the required five-step evaluation considering: 1) whether Stanek was engaged in substantial gainful activity; 2) whether Stanek had severe impairments; 3) whether Stanek's impairments met or equaled an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1; 4) whether Stanek was capable of returning to past work; and 5) whether Stanek could do other work existing in significant numbers in the regional or national economy. *See* 20 C.F.R. § 416.920(a)-(f).

At the first step of the evaluation, the ALJ found that Stanek had not engaged in substantial gainful activity since her amended onset date of March 31, 2009. (*Id.* at 14). At the second step, the ALJ found that Stanek had three severe impairments: 1) post arthroscopy degenerative joint disease of the right knee; 2) obstructive sleep apnea; and 3) obesity. (*Id.*) (citing 30 CFR 404.1520(c), 416.920(c)).

At step three, the ALJ determined Stanek did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525-1526, 416.925-926). (*Id.* at 17). The ALJ found that even when considered together, Stanek's impairments were not sufficiently severe to meet the obesity listing. (*Id.*). The record also did not contain any information as to Stanek's obesity from a treating or examining physician from which to determine the severity of her obesity. (*Id.*).

At step four of the evaluation, the ALJ was required to consider Stanek's subjective complaints as well as objective medical evidence. The ALJ summarized Stanek's testimony demonstrating that she suffered from knee pain, arthritis, depression, anxiety, traumatic brain injury with memory problems, neck pain, carpal tunnel, left ankle pain, incontinence, asthma, congestion, vision deterioration, and obesity. (*Id.* at 15-16, 18). First, the ALJ found that though Stanek's medical impairments could be expected to cause her alleged symptoms, Stanek's statements regarding the persistence and intensity of the limiting effects were not credible to the extent that they were not consistent with a light work RFC. (*Id.* at 19). Second, the ALJ found

the asserted severity of Stanek's impairments was inconsistent with the objective medical evidence and Stanek's course of treatment.  (*Id.* at 19-21).

The ALJ summarized the objective medical evidence regarding Stanek's left ankle.  X-ray examinations of Stanek's left ankle in October 2008 and March 2009 were otherwise negative aside from mild soft tissue swelling, spurring, and calcaneal spurring.  (*Id.* at 15).  Noting that Stanek had not sought treatment for her ankle since March 2009 and that, even when considered together with her back and neck pain and carpal tunnel, the ALJ determined her ankle impairment "did not impose more than minimal limitations on her ability to perform basic work-related activities."  (*Id.*).  As such, the ALJ determined the left ankle impairment was not severe.  (*Id.*).

The ALJ determined that though Stanek's right knee constituted a severe impairment, the objective medical evidence was "weak to say the least."[7]  (*Id.* at 20).  In March 2009, Stanek reported knee pain to Dr. Liebe, but refused physical therapy or chiropractic care.  (*Id.* at 19).  The ALJ emphasized that Dr. Liebe's examination revealed a good range of motion and no swelling, edema, or rheumatoid factors.  (*Id.*).  A May 2009 x-ray, however, showed degenerative changes and a meniscus tear, for which Stanek underwent orthoscopic surgery in June 2009.  (*Id.*).  Despite reporting feeling well after the surgery, Stanek complained of pain and swelling in her knee from a purported re-injury after the surgery.  (*Id.* at 20).  The ALJ also found Stanek's purported use of a cane "interesting" given that no treating physicians had ever prescribed or made note of Stanek using a cane.  (*Id.*).

The ALJ characterized Stanek's RFC as light work as defined in 20 CFR 404.1567(a) and

---

[7] The ALJ pointed out that though the record mentioned that Stanek no longer had insurance, nothing in the record indicated that Stanek sought treatment at free clinics, sliding scale clinics, or an emergency room.  (*Id.* at 20).  She concluded that Stanek's lack of treatment was not consistent with Stanek's allegations of disability.  (*Id.*).

416.967(a) as follows: 1) lifting and carrying of 20 pounds occasionally and 10 pounds frequently; 2) standing or walking six hours of an eight hour day and sitting six hours of an eight hour day with normal breaks; and 3) occasionally stooping, climbing, balancing, crouching, or crawling. (*Id.* at 17). Stanek's RFC restricted her from even moderate expose to hazards such as machinery or heights. (*Id.*). Specifically, the ALJ considered Stanek's obesity in determining her RFC. (*Id.*). The ALJ also remarked on Dr. Liebe's failure to recommend or impose any limitations on her work abilities. (*Id.* at 18).

Next, the ALJ considered the opinion evidence. (*Id.* at 20). She placed significant weight on the non-treating medical consultant's opinions because Stanek failed to demonstrate any objective medical support from her treating physicians for a finding of disability. (*Id.*). The ALJ also disagreed with Dr. DeBorja's assessment of a medium RFC for Stanek rather than a light RFC because the ALJ gave Stanek "the benefit of doubt" that her RFC was more restrictive based on her "obesity and right knee impairment." (*Id.* at 20-21).

Ultimately, the ALJ determined that Stanek's overall level of functioning was not consistent with a finding of disability because Stanek lived independently, worked on her church newsletter, and engaged in a wide range of household tasks and social functioning without significant limitation. (*Id.* at 17-18, 21). Stanek had only mild limitations in her concentration, pace, and persistence and did not experience any episodes of decompensation. (*Id.* at 17). The ALJ emphasized that Stanek testified to receiving unemployment benefits, which demonstrated that she was willing, available, and able to work. (*Id.* at 21). Additionally, the medical evidence did not support Stanek's contention that her condition worsened since she last worked. (*Id.*).

At step five, the ALJ determined that Stanek was capable of performing past work as a Census worker, which did not require the performance of work-related activities that Stanek's

light RFC precluded.  (*Id.* at 21-22).  The ALJ based her determination on the testimony of the VE, Thomas Audet, who answered two hypothetical questions regarding the jobs that an individual with Stanek's impairments would be able to perform.  (*Id.* at 21).  Accordingly, the ALJ concluded that Stanek was not disabled from March 31, 2009 (alleged amended onset of Stanek's disability) to March 22, 2010 (date of ALJ's written decision) as defined in 20 C.F.R. 404.1520(f) and 416.920(f).  (*Id.* at 22).

## II.  STANDARD OF REVIEW

The standards governing the award of Social Security disability benefits are congressionally mandated: "[t]he Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).  "Disability" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(2)(A).  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy." *Id.*

### A.  Administrative Review

If a claimant's initial application for benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.909(a)(1), 416.1409(a).  A claimant who is dissatisfied with the reconsidered decision may seek an ALJ's administrative review. 20 C.F.R. §§ 404.929, 416.1429.  If the claimant is dissatisfied with the ALJ's decision, then an Appeals Council review may be sought, although that review is not automatic.  20 C.F.R. §§ 404.967-.982, 416.1467.  If the request for review is denied, then the Appeals Council or ALJ's decision is final

and binding upon the claimant unless the matter is appealed to a federal district court.  An appeal to a federal court of either the Appeals Council or the ALJ's decisions must occur within sixty days after notice of the Appeals Council's action. 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 416.1481.

### B.  Judicial Review

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive.  42 U.S.C. § 405(g).  This Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by 'substantial evidence in the record as a whole.'" *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003) (quoting *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002)).  A court's task is limited to reviewing "the record for legal error and to ensure that the factual findings are supported by substantial evidence." *Id.*

The "substantial evidence in the record as a whole" standard does not require a preponderance of the evidence but rather only "enough so that a reasonable mind could find it adequate to support the decision." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  Yet, this Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000).  Thus, a "notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.'" *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989) (internal citation omitted).

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis.  In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.* (internal citation omitted).

In reviewing the ALJ's decision, this Court analyzes the following factors: 1) the ALJ's findings regarding credibility; 2) the claimant's education, background, work history, and age; 3) the medical evidence provided by the claimant's treating and consulting physicians; 4) the claimant's subjective complaints of pain and description of physical activity and impairment; 5) third parties' corroboration of the claimant's physical impairment; and 6) the VE's testimony based on proper hypothetical questions that fairly set forth the claimant's impairments. *Brand v. Sec'y of the Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980). Proof of disability is the claimant's burden. 20 C.F.R. § 404.1512(a). Thus, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

Reversal is not appropriate "merely because the evidence is capable of supporting the opposite conclusion." *Hensley*, 352 F.3d at 355. If substantial evidence on record as a whole permits one to draw two inconsistent positions and one of those represents the Commissioner's findings, then the Commissioner's decision should be affirmed. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court's task "is not to reweigh the evidence, and [the Court] may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the Court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999).

## III. DISCUSSION

### A. Whether the ALJ Adequately Developed the Record

The ALJ bears a "responsibility to develop the record fairly and fully, independent of the

claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (internal citation omitted); *see Coleman v. Astrue*, 498 F.3d 767, 771 (8th Cir. 2007) (quoting *Snead*, 360 F.3d at 838-39).   Unless a critical issue is undeveloped, the ALJ is not required to obtain additional or clarifying statements.   *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).   Generally, the claimant's failure to provide information as to Step Four, where the claimant bears the burden of proof, "should not be held against the ALJ when there **is** evidence that supports the ALJ's decision."   *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (emphasis in original).   Put another way, "'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Warburton v. Apfel*, 188 F.3d 1047, 1051 (8th Cir. 1999) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)); *see Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

### 1.   The ALJ Adequately Developed the Record

Stanek asserts that Dr. DeBorja's Physical RFC Assessment does not constitute substantial evidence for three reasons: 1) DeBorja's report is the only Physical RFC Assessment in the record; 2) DeBorja is not Stanek's treating physician; and 3) DeBorja completed the Assessment nine months before Stanek's amended onset disability onset date.   (Pl.'s Mem. at 12).

First, if the record provides a "sufficient basis for the ALJ's decision," then the ALJ need not obtain additional medical evidence.   *See* 20 C.F.R. § 416.927(c)(4); *see also Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) (concluding "the ALJ had sufficient evidentiary basis" for assessing the claimant's RFC without seeking an additional medical expert opinion).   Here, the ALJ reviewed and summarized Stanek's medical records regarding her knee and ankle

impairments and Dr. DeBorja's Assessment in determining that Stanek's ankle impairment was not severe and Stanek had a light work RFC.  (*Id*. at 17, 20-21).  Approximately 40 pages of medical records pertaining to Stanek's right knee and left ankle impairment provide ample evidence supporting the ALJ's decision. (*Id*. at 174-75, 194, 212-216, 230-31, 252, 267, 291, 296-97, 367-71, 375-76, 382-84, 397-402, 405-06, 418-19, 423-25, 427-29).  Furthermore, Stanek's testimony significantly undercut her assertions that her knee condition worsened since her surgery and that she was disabled.  Nine months after her amended disability onset date, Stanek stated that she was: 1) actively seeking employment and collecting unemployment benefits; 2) able and willing to work; 3) capable of using the computer for four to five hours per day and writing her church newsletter; 4) able to drive; 5) had no problems socializing with people in her church group; 6) could perform household chores; 7) able to work through her emotional issues and; 8) capable of caring for her personal needs.  (*Id*. at 28, 36-38, 40-44).  The ALJ had a more than adequate evidentiary basis from which to determine that Stanek was not disabled.

Second, an ALJ is not required to request an RFC assessment from a treating physician when existing medical evidence in the record is sufficient to make such a determination.  *See* 20 C.F.R. § 416.927(c)(3).  The ALJ did not note any ambiguity or incompleteness in Dr. Liebe's notes or records.  The records spanned two years, which also allowed the ALJ an adequate opportunity to analyze the impact of Stanek's right knee and left ankle impairments on her RFC.  (*Id*. at 252, 267, 423-25).

Third, the fact that Dr. DeBorja's Assessment was written nine months before Stanek's alleged disability onset date does not in itself render the Assessment incapable of serving as substantial evidence on the record.  20 C.F.R. § 404.1527(d) (1)-(6) provides the following

19

factors for determining the extent to which medical opinions should be given controlling weight: 1) the existence of an examining relationship; 2) the extent of a treatment relationship; 3) supportability based on medical evidence; 4) consistency with record as a whole; 5) specialization of the expert; and 6) other additional facts.  Dr. DeBorja did not have a treating relationship with Stanek, yet he thoroughly examined Stanek's medical records from March 2008 to July 2008 in his musculoskeletal evaluation.  (*Id*. at 296-97).  Though Dr. DeBorja's report is inconsistent with the record as a whole to the extent that it does not consider records from July 2008 to March 31, 2009, it was appropriate for the ALJ to rely on Dr. DeBorja's opinion because he is a board certified surgeon.  (*Id*. at 296).  More significantly, Dr. DeBorja's conclusion that Stanek was not disabled was consistent with Dr. Liebe's statement that he did not believe that Stanek met the criteria for disability in February 2010.  (*Id*. at 429).  Additionally, the ALJ did not wholly adopt Dr. DeBorja's medium RFC determination but rather gave Stanek the "benefit of the doubt" and assessed a light RFC.  (*Id*. at 20-21).  Weighing these factors, the absence of additional RFC Assessments aside from that of Dr. DeBorja did not constitute a failure to develop the record.

### 2.  The ALJ's Decision Not to Re-Contact Dr. Liebe Did Not Constitute a Failure to Develop the Record.

Stanek argues that by failing to contact Dr. Liebe to request a Physical RFC Assessment, the ALJ did not develop the record adequately.  An ALJ is not required to obtain additional medical evidence if the other evidence in the record provides a sufficient basis for the ALJ's decision.  *Warburton v. Apfel*, 188 F.3d 1047, 1051 (8th Cir. 1999).  20 C.F.R. § 404.1512(e)(1) states:

> We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved,

the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

*Id.*

Prior to this passage, the regulation states that re-contacting is necessary "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." 20 C.F.R. § 404.1512(e). The ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped. *Goff*, 421 F.3d at 791.

The ALJ did not find Dr. Liebe's opinion to be ambiguous, inadequate, or incomplete, nor did she discount Dr. Liebe's opinion. Rather, the ALJ emphasized that Dr. Liebe neither observed any swelling or edema nor imposed any work restrictions despite Stanek's numerous complaints. (*Id.* at 15, 17, 19-20). The medical records documenting Stanek's course of treatment with Drs. Harker, Liebe, and Lister over the course of two years provided an adequate objective medical evidence from which to determine Stanek's RFC. (*Id.* at 252, 267, 423-25). The ALJ did not need to contact Dr. Liebe for additional information.

### 3. The Absence of a Physical RFC Assessment from a Treating Physician Was Harmless Error

Assuming *arguendo* that the ALJ failed to adequately develop the record by not obtaining additional information or an RFC Assessment from Stanek's treating physicians, any such error was harmless. To necessitate remand for failure to develop, a claimant must show that he or she was "prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). In demonstrating prejudice, a claimant must present evidence supporting the proposition that additional evidence would have been favorable to a disability determination. *See LaCroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (citing

*Onstad*, 999 F.2d at 1234); *see also Rassett v. Astrue*, No. 10-3751, 2011 WL 3610648, at *10-11 (D. Minn. Aug. 1, 2011) (explaining plaintiff did not show that the ALJ's decision would have differed if additional treatment notes were obtained).   Whether a claimant has or had a lawyer that failed to attempt to obtain the relevant information is an additional relevant factor in determining prejudice.  *See Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981).

First, Stanek has made no showing that Dr. Liebe would have provided an opinion supporting her contention that she was totally disabled.[8]   In fact, in the most recent medical records, Dr. Liebe asserted he did not believe Stanek was disabled, which prevents an inference that any hypothetical additional opinion would have supported Stanek's contention of disability. (*Id*. at 429).   Furthermore, Stanek's own testimony that her knee and ankle pain has been consistent since March 2009 contradicted Dr. Liebe's reports as to the severity of her knee and ankle impairments.  (*Id*. at 38, 45-46).   Stanek cannot, therefore, show that she was prejudiced by the ALJ's failure to contact Dr. Liebe.   Additionally, Stanek's personal representative made no attempt to obtain further information from Dr. Liebe regarding Stanek's impairments and did not make such a request at the hearing.  (*Id*. at 23, 214-16).   Based on these facts, the Court cannot conclude that Stanek was prejudiced; remand is not warranted.

Stanek also argues that the ALJ impermissibly drew her own inferences in determining Stanek's RFC and functioned as a medical expert.   (Pl.'s Mem. at 15) (citing *Strongson v. Barnhart*, 361 F.3d 1066, 1070-71 (8th Cir. 2004)).   Determining the claimant's RFC based on all relevant evidence including the observations of treating physicians and others, medical records, and the claimant's own assertions regarding his limitations is the ALJ's explicit

---

[8] Dr. Liebe appears to have made at least a colorable attempt to fill out a functional capacity assessment on Stanek's behalf approximately five months before her amended disability onset date.  (*Id*. at 418-19).  Stanek has not asserted that Liebe completed his assessment, nor has she alleged that its non-inclusion can in any way be attributed to the Commissioner.

responsibility.  20 C.F.R. §§ 404.1545-46, 416.945-46; *see LaCroix v. Barnhart*, 465 F.3d 881.

887 (8th Cir. 2006).  Moreover, Stanek's argument based on *Strongson* is not applicable to the

instant case because in *Strongson* the ALJ re-weighed the evidence to disagree with a medical

expert and disregard his opinion.  316 F.3d at 1070-71.  Here, in contrast, the issue is not

whether the ALJ disregarded an opinion of a medical expert or treating physician but rather

whether the record was adequately developed.  Unlike the ALJ in *Strongson*, the ALJ in this case

did not draw inferences opposite to those of Dr. Liebe, but rather she explicitly and thoroughly

considered the medical evidence he provided.  (*Id.* at 17, 20-21).  As such, the ALJ's decision is

supported by substantial evidence on the record and a whole and should be affirmed.  *See Smith*

*v. Shalala*, 987 F.2d 1371, 1373-73 (8th Cir. 1993) (internal citation omitted).

## IV.   RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.  Plaintiff Stanek's Motion for Summary Judgment [Doc. No. 10] be **DENIED**; and

2.  Defendant Commissioner Astrue's Motion for Summary Judgment [Doc. No. 16] be

**GRANTED**.

Dated: December 23, 2011

s/ Steven E. Rau
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing
with the Clerk of Court, and serving all parties by **January 6, 2012**, a writing which specifically
identifies those portions of this Report to which objections are made and the basis of those
objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting
party's right to seek review in the Court of Appeals.  A party may respond to the objecting
party's brief within ten days after service thereof.  A judge shall make a de novo determination
of those portions to which objection is made.  This Report and Recommendation does not
constitute an order or judgment of the District Court, and it is therefore not appealable to the
Court of Appeals.